UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VINCENTA BOCAGE                                    CIVIL ACTION

VERSUS                                             No. 08-3487

BOOMTOWN CASINO NEW ORLEANS                        SECTION: I/2

ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, Louisiana-I Gaming, doing business as Boomtown Casino New Orleans, ("Boomtown"). For the following reasons, the motion is **GRANTED**.

BACKGROUND

On May 16, 2008, plaintiff, Vincenta Bocage ("Bocage"), filed a complaint in this Court, alleging that Boomtown unlawfully terminated her employment as a casino cashier in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Right Act of 1991, 42 U.S.C. § 2000e.[1] In November, 2007, Boomtown suspended Bocage and then terminated her employment a few days later. According to her complaint, a Boomtown human resources representative discharged Bocage during a November 8, 2007 meeting "for calling a customer at home."[2]

Bocage's complaint alleges that Boomtown terminated Bocage's employment because of her Belizean origin. She also claims that

_____

[1] Rec. Doc. No. 1.

[2] *Id.* at para. 8.

1

Boomtown violated Title VII by unlawfully retaliating against her due to her national origin and due to "her prior complaints of discriminatory conduct against her."[3] Bocage's complaint further alleges that she exhausted her administrative remedies by filing a charge with the Equal Employment Opportunity Commission [EEOC] on January 3, 2008.[4]

Boomtown filed this motion for summary judgment on the ground that Boomtown terminated Bocage's employment because she called a customer at home without permission, not because of her national origin. Boomtown contends that Bocage cannot prove that Boomtown discriminated against Bocage because of her national origin. Boomtown further argues that Bocage has failed to state a claim for discrimination based on disability or retaliation.[5]

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any

---

[3] *Id.* at paras. 7, 14.

[4] *Id.* at para. 5. Bocage's EEOC charge states the same factual allegations regarding her suspension and termination as her complaint. Although her complaint focuses entirely on national origin-based discrimination, Bocage's EEOC charge alleges that Boomtown also discriminated against her because of her disability. The charge does not, however, allege a particular disability. Rec. Doc. No. 20-18.

[5] On April 22, 2009, a U.S. Magistrate Judge denied Bocage's motion to amend her complaint to specifically plead claims that Boomtown unlawfully terminated her employment in violation of the Americans with Disabilities Act and that Boomtown unlawfully retaliated against Bocage in violation of 42 U.S.C. § 1981. Rec. Doc. No. 33. The U.S. Magistrate Judge's decision was not appealed to this Court.

affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id*. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id*. at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. <u>NATIONAL ORIGIN DISCRIMINATION</u>

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, the plaintiff may prove a Title VII claim through circumstantial evidence. Where the plaintiff relies upon circumstantial evidence, the claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1978). *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Despite the burden-shifting framework, "[t]he ultimate burden...remains at all times with the plaintiff." *Tex. Dept. Of Comm. Affairs v. Burdine*, 450

U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

Under the *McDonnell Douglas* test, the plaintiff must establish a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000). In order to establish a *prima facie* case, the plaintiff must show "'that she:(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class' or in the case of disparate treatment, [she must show]'that others similarly situated were treated more favorably.'" *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)(quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the employer meets this burden, "then the presumption of discrimination vanishes." *Okoye*, 245 F.3d at 512.

The plaintiff then carries the burden of showing either that the employer's proffered reason was a pretext for discrimination or

5

that the employer's "reason, while true, is only one of the reasons for its conduct," and that the plaintiff's protected characteristic, in this case her national origin, is "another motivating factor." *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citations omitted); *Turner*, 476 F.3d at 347; *Wallace* v. *Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)("A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated' her employer's decision, such as through evidence of disparate treatment, 'or that [her employer's] explanation is unworthy of credence.'" (quoting *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998))). The plaintiff's evidence of pretext must be substantial. *Turner*, 476 F.3d at 345; *Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 312 (5th Cir. 1999).

In the instant case, Boomtown has offered a nondiscriminatory reason for firing Bocage and Bocage has not created a genuine issue of material fact which would support an argument that the proffered reason was a pretext for discrimination or that her national origin motivated Boomtown's decision. As such, the Court will assume without deciding that Bocage has established a *prima facie* case and focus its discussion on Bocage's rebuttal evidence. *See Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 312 (5th Cir. 1999)("Because [the plaintiff] cannot show that the defendants' reason for the challenged employment decision is a pretext for

unlawful discrimination, we need not concern ourselves with whether [the plaintiff] has established a prima facie case of discrimination."); *Okoye*, 245 F.3d at 513; *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 n.5 (5th Cir. 1997)("Because strict application of the burden-shifting framework is not particularly helpful to our analysis of this case, we proceed directly to the ultimate question of whether [the plaintiff] has established a fact issue that national origin was a motivating factor in his termination.").

According to Boomtown, Bocage was fired because she violated company policy[6] by using personal information obtained at work to call a customer's home without the permission of a supervisor or manager. Boomtown's human resources director declared in a sworn affidavit that she fired Bocage after reviewing the statements of several Boomtown employees indicating that Bocage had contacted a customer without the consent of a Boomtown representative.[7] Boomtown records also identify unauthorized customer contact as the reason for Bocage's termination: a "Record of Counseling" shows that Boomtown suspended Bocage on November 5, 2007 for calling a

---

[6]Boomtown cites its employee handbook, which prohibits "[a]ny type of conduct which is or has the effect of being rude, discourteous, injurious, offensive, threatening, intimidating, coercing or interfering with fellow employees or patrons, "[d]ivulging confidential information of any kind about a customer, another employee, or matters pertaining to Boomtown, including but not limited to, financial matters, player action reports, and employee file information," and "[c]onduct, on or off duty, which adversely affects or reflects upon Boomtown." Rec. Doc. No. 20-3, p. 4; Rec. Doc. No. 20-9.

[7]Rec. Doc. No. 30-3; Rec. Doc. No. 31.

customer on October 21, 2007[8] and a "Personnel Action Form" indicates that Boomtown terminated Bocage's employment on November 9, 2007 due to a "violation of confidentiality" and "unsatisfactory guest relations."[9]

Bocage's evidence does not support an argument that Boomtown's reason for termination, i.e., contacting a customer without the consent of a supervisor, is unworthy of credence. Notably, Bocage does not dispute that she called a Boomtown customer, Irene Ricks("Ricks").[10] Moreover, Bocage does not offer evidence that she did obtain a supervisor's consent before calling the customer. Bocage's deposition testimony that she "called looking for the supervisor," that she "told [her supervisor] what had happened," and that her supervisor said that "she was coming up" is not sufficient to rebut Boomtown's explanation that she called a customer without consent. Bocage's testimony neither shows that Bocage received permission nor creates a genuine issue of material fact as to whether Boomtown's explanation was false.

_____

[8] Rec. Doc. No. 20-5. The "Record of Counseling" states, "You cannot call the customer under any circumstances without contacting the supervisor on duty. The customer and her family felt embarrassed about the incident."

[9] Rec. Doc. No. 20-6. The attached "Record of Counseling" states, "On 10-21-07 you left a message on a customer's telephone regarding overpayment. This was embarrassing to our customer and was a violation of our confidentiality agreement as well as a violation of following department procedures & standards of conducts [sic]." The record further states, "We are terminating you for divulging confidential information of any kind about a customer, another employee, or matters pertaining to Boomtown, including but not limited to financial matters, [player] action report."*Id.* at p. 2.

[10] Rec. Doc. No. 29-3, pp. 14-15.

Notwithstanding her admission that she called a customer, Bocage argues that she did not violate company policy by speaking to Ricks in an offensive or discourteous manner. Instead, Bocage submits Ricks' affidavit and deposition testimony to show that it was her supervisor/cage manager, Pamela Wray ("Wray"), who spoke to Ricks on the telephone and who did so "in a discourteous and offending manner."[11] Such evidence does create a genuine issue as to whether Bocage actually spoke to Ricks and acted in an inappropriate manner. However, even if Boomtown did base its decision to terminate Bocage on incorrect information, such evidence does not show that Boomtown's proffered reason is a pretext for national origin discrimination. *See Mayberry v. Vought Aircraft* Co., 55 F.3d 1086, 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."); *Houk v. Peoploungers Inc.,* 214 F. App'x 379, 381 (5th Cir. 2007). According to her affidavit, Boomtown's human resources director based her decision to terminate Bocage on a statement by Boomtown's former executive casino host who had been approached by the complaining customer as well as on

---

[11]Rec. Doc. No. 35-4, pp. 6-7; Rec. Doc. No. 36; Rec. Doc. No. 29-4, para. 5. Ricks testified in her deposition that it was "Pam" who told her on the telephone that Boomtown had overpaid Ricks and that Boomtown had her picture on video. Rec. Doc. No. 35-4, p. 7.

The Court is also not persuaded by Bocage's attempts to rebut Boomtown's explanation by directing the Court to insignificant inconsistencies in Boomtown's personnel records regarding whether Bocage called Ricks' house and left a message or whether Bocage called Ricks' telephone. *See* Rec. Doc. No. 29-6.

statements by Bocage's supervisors, including a supervisor other than Wray.[12] As long as Boomtown relied upon such information in good faith and not out of discriminatory animus, the accuracy of the information is not relevant. *Jones v. Overnite Trans. Co.*, 212 F. App'x 268, 275 (5th Cir. 2006)(citing *Mayberry*, 55 F.3d at 1091)("An employer can make an incorrect employment decision; if based on a good faith belief with no discriminatory influences, then the court will not try the validity of the reason"); *Mayberry v. Mundy Contract Maint.*, 197 F. App'x 314, 316 (5th Cir. 2006); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 816 (5th Cir. 1993)("The fact that the employers' reasonable belief eventually proves to have been incorrect...would not change the conclusion that the firing had been nondiscriminatory."). Other than argument that Wray's statement was self-serving, Bocage has not offered any evidence indicating that Boomtown's reliance on its employees' statements was unreasonable or in bad faith.

Bocage, who does not dispute that she was an at-will employee, further argues that simply calling a customer did not violate company policy. Although Boomtown cites a provision in the employee handbook which prohibits "[d]ivulging confidential information of any kind about a customer, another employee, or matters pertaining to Boomtown, including but not limited to, financial matters,

---

[12]Rec. Doc. No. 30-3, paras. 7-9.

player action reports, and employee file information"[13] and the record of Bocage's termination refers to this policy in connection with her unauthorized customer contact,[14] Bocage argues that she did not "divulge" confidential information when she called the customer. Boomtown responds that Bocage violated company policy because she "utilized" confidential information in order to contact the customer.[15]

The Court notes that a disagreement about policy interpretation, an erroneous interpretation of a policy, or an incorrect reliance on a policy does not, as discussed above, demonstrate a pretext for discrimination so long as Boomtown acted in good faith and without a discriminatory motive. *Symbrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558-59 (6th Cir. 2009)("[D]isputes about the interpretation of company policy do not typically create genuine issues of material fact regarding whether a company's stated reason for an adverse employment action is only a pretext designed to mask unlawful discrimination."); *Gibson v. Applebee's Neighborhood Grill*, No. 07-0719, 2008 WL 4224815, at *3 (W.D. La. Sept. 10, 2008)("[The plaintiff] is not entitled to an inference of discrimination simply because he disagrees with [the employer's] interpretation of the Policy."). As discussed below,

---

[13]Rec. Doc. No. 20-9; Rec. Doc. No. 20-7.

[14]Rec. Doc. No. 20-6.

[15]Rec. Doc. No. 41, p. 7.

Bocage has not presented any evidence suggesting that Boomtown was motivated or influenced by her national origin and, as such, Boomtown's erroneous reliance on a policy to terminate her employment does not create a genuine issue of material fact sufficient to support plaintiff's argument that Boomtown's proffered reason was a pretext for national origin discrimination.

Bocage also fails to submit sufficient evidence to support her "mixed-motive" theory that discriminatory animus was a motivating factor in Boomtown's decision to fire her. Bocage directs the Court to an email from Boomtown's human resources director wherein she describes plaintiff's excuses for calling the customer after her termination by writing "Blah, Blah, Blah."[16] Although the contents of the email may be insensitive, the correspondence is not evidence of national origin discrimination.[17]

---

[16]Rec. Doc. No. 29-7. The email states that Bocage and her family repeatedly called Ricks after Bocage's was discharged, telling Ricks that Ricks' complaint was the reason that she was discharged and that she is unable to afford her medical treatment due to her employment termination. The Court notes that the email by itself is not competent summary judgment evidence. Nonetheless, both parties submit the email as evidence.

[17]The Court also rejects as insufficient Bocage's other arguments that Boomtown's decision was motivated by discriminatory animus, including arguments that discriminatory animus is evidenced by the human resources director's denial that she knew of Bocage's heart condition, by Boomtown's threats of police or legal action to prevent Bocage from continuing to contact Ricks, and by Boomtown's decision to cancel a board review of Bocage's employment termination. All of these alleged incidents occurred **after** Boomtown's decision to terminate Bocage's employment and none support an argument or an inference that Boomtown discriminated against Bocage because of her Belizean national origin.

Bocage also refers to an inappropriate comment made by a casino dealer that "all you-all eat in your hometown is rice." Rec. Doc. No. 29-3, p. 25. Bocage attributed the comment to a casino dealer, not a Boomtown supervisor or human resources representative with any authority to initiate any tangible employment action against her. *Id; see Burlington Indus. v. Ellerth*, 524 U.S. 742, 762-65, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) ("[A] tangible

When determining whether discrimination was a motivating factor, courts may consider evidence of disparate treatment, particularly that similarly situated employees outside of plaintiff's protected class were treated more favorably than plaintiff. *Nieto*, 108 F.3d at 623 n.5; *Wallace*, 271 F.3d at 220; *Okoye*, 245 F.3d at 514. The preferential treatment, however, must be under "'nearly identical circumstances.'" *Okoye*, 245 F.3d at 514 (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

To the extent that Bocage's deposition testimony indicates any varying treatment between Bocage and other employees, Bocage fails to submit evidence that such treatment occurred under "nearly identical circumstances." First, Bocage testified that an employee of American origin was not suspended or discharged for contacting a customer.[18] However, Bocage also testified that she did not know whether the employee spoke to a supervisor before calling the customer or whether Boomtown was aware that this employee had contacted a customer without permission.[19] *See Jusuf v. Southwest Airlines Co.*, No. 08-10383, 2008 WL 4948615, at *3 (5th Cir. Nov. 20, 2008)(citing *Wallace*, 271 F.3d at 221)(explaining that the

---

employment action taken by the supervisor becomes for Title VII purposes the act of the employer."). The Court also notes that once Bocage reported the comment, a human resources representative discussed the comment with the dealer and the dealer apologized. Rec. Doc. No. 29-3, p. 25.

[18]Rec. Doc. No. 29-3, pp. 18-19.

[19]*Id.*

13

employer must be aware of the alleged misconduct of the other employee.).

Second, the fact that Wray was not discharged for allegedly speaking to Ricks in a discourteous manner does not demonstrate disparate treatment as she was a supervisor, not a cashier like Bocage. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000)(noting that the plaintiff held a different job from the employee who allegedly received more favorable treatment). There is also no evidence that Boomtown knew that Wray had spoken to the customer in such a way, at least until this litigation began.[20]

Third, Bocage testified that when another cashier and Wray caused a cash shortage, "nothing happened" to them other than the fact that they were written up.[21] However, Bocage was neither suspended nor terminated due to a cash shortage, but instead due to her unauthorized phone call to a customer.[22] Therefore, such circumstances are ***not*** nearly identical. *See Jusuf*, 2008 WL 4948615, at *3 ("For conduct to be nearly identical, the individual given

---

[20]None of the statements that the human resources director relied upon when making her termination decision indicate that Wray spoke to Ricks in a discourteous manner. *See* Rec. Doc. No. 20-10; Rec. Doc. No. 11; Rec. Doc. No. 12; Rec. Doc. No. 30-3; Rec. Doc. No. 31.

[21]*Id.* at pp. 23-24. Bocage also identified another employee, Shakita Williams, who was suspended, but not fired, for a cash shortage. As discussed, a cash shortage is not the circumstance for which Bocage was fired.

[22]Bocage testified that she had caused a cash shortage before and she was not penalized. *Id.* at p. 24.

preferential treatment needs to have engaged in similar conduct....").

Bocage also contends that she was treated differently from other employees with respect to wearing uniforms, missing work, and leaving the cashier's window without permission.[23] However, even if true, none of these occurrences demonstrate disparate treatment. On two occasions, Bocage received points in her record for wearing jeans to work and for failing to timely notify Boomtown that she had to miss work when others allegedly did not receive points for such conduct.[24] Nevertheless, Bocage admitted in her deposition that Boomtown removed these points after Bocage explained the circumstances to human resources representatives.[25] Bocage also testified that when she left her cashier's window early on one occasion, she was verbally reprimanded.[26] Bocage has not offered any evidence, however, that Boomtown did anything more than speak to her about her conduct.[27]

_____

[23]Rec. Doc. No. 29, p. 15.

[24]Rec. Doc. No. 29-3, pp. 10, 26, 30.

[25]*Id.*

[26]Rec. Doc. No. 29-3, p. 13 ("I seen other people move out their window and wasn't told nothing.).

[27]With respect to other alleged disparate treatment identified by Bocage in her opposition memorandum, *see* Rec. Doc. No. 29, pp. 4-5, Bocage has not offered any admissible summary judgment evidence to show that employees of different national origins were treated more favorably than her. In fact, other than "Glenda," who Bocage testified was not penalized for leaving the cashier's window early and calling a customer, Bocage has not offered any evidence as to the national origin of the other employees who were allegedly treated more favorably when they missed work without justification, left the cashier's window early, or were permitted to leave or miss work due to

Because Bocage fails to present evidence sufficient to show that Boomtown's proffered reason for firing her was a pretext for discrimination or that her national origin was a motivating factor in Boomtown's decision to discharge her, Bocage cannot maintain a Title VII claim for national origin-based discrimination.

## III. **DISABILITY**

Bocage's complaint, which the U.S. Magistrate Judge recently denied leave to amend, makes no mention of disability. As such, Boomtown asserts that Bocage should be precluded from asserting any claim of disability under the Americans with Disabilities Act ("ADA"). Bocage responds that Boomtown was aware that she had a heart condition[28] and that her EEOC charge put Boomtown on notice that she was asserting claims of disability-related discrimination.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

---

sickness. Nor has Bocage offered any evidence that the employees were acting under nearly identical circumstances. Without such evidence, the Court cannot infer national origin discrimination.

[28]Bocage does not argue that Boomtown was aware that she had diabetes, which she claims is one of her disabilities.

Bocage's complaint contains no statement with respect to the ADA or her alleged disability. Instead, Bocage's complaint refers only to Title VII, particularly claims of national origin discrimination and unlawful retaliation.[29] The only suggestion in Bocage's complaint that she might assert an ADA claim in this lawsuit is the statement that plaintiff incorporates by reference "*in globo* and *in extenso*" the factual allegations contained in her EEOC charge.[30]

Rule 10(c) of the Federal Rules of Civil Procedure permits adoption by reference. Fed. R. Civ. P. 10(c)("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")[31] However, incorporation by reference "must be done with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behavioral Health Sys., Inc*., 185 F.R.D. 225, 228-29 (W.D. La. 1999)[32]; *see also Shelter*

_____

[29]Rec. Doc. No. 1.

[30]Rec. Doc. No. 1, para. 7.

[31]The Court notes that Bocage's EEOC charge is not attached to her complaint as an exhibit, although Bocage specifically refers to the numbered charge in her complaint. Rec. Doc. No. 1.

[32]In *Wolfe*, the U.S. District Court found that the plaintiffs had dismissed a retaliation claim where a fourth amended complaint failed to specifically mention a retaliation claim. 185 F.R.D. at 229. The court rejected the argument that the claim was saved by the broad adoption clause in the fourth complaint that plaintiffs "reincorporate, reaver and reallege the

*Mut. Ins. Co. V. Pub. Water Supply Dist. No. 7*, 747 F.2d 1195, 1198 (8th Cir. 1984)("A pleading incorporating allegations from other documents must clarify which statements are to be incorporated."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1326, at 431-32 (3d ed. 2004)("Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation."); *Mullins v. U.S. Bank*, No. 05-1002, 2007 WL 838941, at *3 (S.D. Ohio Mar. 15, 2007)(finding that the "listing of race discrimination on the EEOC charge form was insufficient to place Defendant on notice that Plaintiff was making a race discrimination claim in this lawsuit").

Bocage's incorporation statement broadly adopts all "factual allegations" stated in her EEOC charge. Notably, the factual allegations in her complaint are nearly the same as those stated in her EEOC charge. Absent from her complaint, however, is the allegation that she was "discriminated against because of...my disability in violation of...the Americans with disabilities [sic] Act."[33] In light of the complaint's explicit reference to Title VII and national origin discrimination and the complete absence of any

---

entirety of all allegations and prayers contained with the original complaint" because the adoption clause lacked specificity and clarity. *Id.*

[33]Rec. Doc. No. 20-18.

reference to the ADA or Bocage's disability, Boomtown is not on "fair notice" that Bocage intends to pursue an ADA claim in **this** lawsuit. The sweeping incorporation of the EEOC's factual allegations lacks any degree of clarity and, therefore, it neither gives notice of nor preserve Bocage's ADA claim. Moreover, even if such statement did incorporate the entire EEOC charge, Bocage's complaint fails to give Boomtown fair notice as Bocage only makes conclusory allegations of an ADA violation and she does not identify her disability. *See Brittain v. Trane Am. Standard*, No. 02-40944, 2003 WL 261828, at *2 (holding that a complaint that referenced only Title VII and the Family Medical Leave Act and that attached an EEOC charge that made only conclusory allegations of termination in violation of the ADA failed to give the defendant fair notice); *Super v. Price Waterhouse*, No. 94-7466, 1995 WL 498773, at *2 (S.D.N.Y. 1995). Given the fact that Bocage's complaint failed to give Boomtown fair notice that she intended to pursue her claim of disability-based discrimination in this lawsuit, Bocage cannot proceed with her ADA claim.

Notwithstanding, Bocage also fails to offer sufficient evidence to maintain an ADA claim. "In order to make a prima facie case of discrimination under the ADA, a plaintiff must establish that she is a qualified individual with a disability and that the negative employment action occurred because of the disability." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998).

19

Because Bocage lacks evidence that she suffers from a disability, as defined by federal law, her ADA claims fail. *See id.*

Federal regulations define disability as "[a] physical or mental impairment that substantially limits one or more major life activities of an individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment. *Id.*; 29 C.F.R. § 1630.2(g). "Substantially limits" means that the plaintiff is "unable to perform a major life activity that the average person in the general population can perform" or that the plaintiff is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). A "major life activity" refers to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

"Whether an impairment substantially limits a major life activity depends on the following factors: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or expected long term impact." *Sherrod*, 132 F.3d at 1119 (citing 29 C.F.R. § 1630.2(j)(2)). Because the "particularized inquiry mandated by the ADA centers on substantial limitation of major life activities, not

mere impairment," "courts must examine how an impairment affects one's life activities in light of one's attempts to correct his impairment." *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999).

Bocage argues that she suffers from both diabetes and a deformed aortic valve in heart. However, Bocage has not submitted any evidence that either condition substantially limits a major life activity. Bocage testified in her deposition that she takes medicine for diabetes and that her diabetes is under control.[34] With respect to her heart condition, Bocage testified that when she has an attack, her "heart just palpitates real fast like 100 or more" and she has to take a pill.[35] She further testified that the attacks last "maybe a minute, sometimes two minutes, sometimes five minutes" and that she feels better a few minutes after she takes a pill.[36] When asked at her deposition whether there is anything that she has unable to do since her diagnosis, Bocage responded "no."[37]

---

[34]Rec. Doc. No. 29-3, pp. 28-29.

[35]*Id.* at p. 8. Despite Bocage's argument that diabetes is a disability under the ADA, the Fifth Circuit has declined to recognize certain impairments, such as diabetes, as disabilities *per se*, but instead has held that disability determinations should be made on "an individualized, case-by-case" basis. *Deas v. River West, L.P.*, 152 F.3d 471, 477-78 (5th Cir. 1998); *see also Griffin v. United Parcel Serv., Inc.*, No. 08-2000, 2008 WL 3851598, at *4 (E.D. La. Aug. 13, 2008) (Barbier, J.).

[36]*Id.* at pp. 8-9. On one occasion, a Boomtown employee took Bocage to the emergency room due to her heart condition. Bocage testified that by the time she had arrived at the hospital, the symptoms had stopped and she went back to work without being examined. Other than that occasion, Bocage testified that she went to the emergency room a few times while she was not at work. *Id.* at pp. 9-10. Since her termination, Bocage has undergone two surgeries for this condition. *Id.* at p. 11.

[37]*Id.* at p. 12.

She also testified that she could care for herself and that she could perform all of the daily activities that she was able to do previously.[38] As such, there is no evidence that Bocage suffers from an impairment that substantially limits her ability to perform any major life activities.

## IV. <u>RETALIATION</u>

Finally, Bocage's complaint alleges that Boomtown unlawfully retaliated against her in violation of Title VII.[39] Notwithstanding this allegation, Boomtown contends that Bocage has failed to allege a claim of retaliation under Title VII because she has not exhausted the administrative remedies as required by Title VII.

Before initiating a lawsuit pursuant to Title VII, including claims of retaliation, a plaintiff must file an administrative complaint and exhaust such administrative remedies.[40] *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)("The filing of an administrative complaint is ordinarily a jurisdictional prerequisite to a Title VII action."); *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997). A U.S. District Court only has jurisdiction over claims addressed in the EEOC charge. *Id.* As such, the Court may consider "only the specific allegations made in [the

---

[38]*Id.*

[39]Rec. Doc. No. 1, para. 14.

[40]Exhaustion is not required for retaliation claims made under 42 U.S.C. § 1981. However, the U.S. Magistrate Judge denied Bocage's motion to amend her complaint to allege a § 1981 claim.

EEOC charge] as well as 'any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'" *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007)(quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)); *Id.*

On the form of her EEOC charge, Bocage only checked the boxes next to national origin and disability as the bases for discrimination.[41] Despite an instruction on the form to "check the appropriate box(es), Bocage did not check the box next to retaliation.[42]

In light of her failure to specifically identify retaliation as a basis for her discrimination claim, Boomtown contends that Bocage has failed to exhaust administrative remedies with respect to this claim. Bocage admits that she did not check the box for retaliation, but she argues, without citing any legal authority, that her EEOC charge nonetheless "reasonably encompasses a retaliation claim."

The Court recognizes that the mere failure to check a box may not necessarily indicate a failure to exhaust. *Pacheco*, 448 F.3d 783, 792 (5th Cir. 2006). Notwithstanding, Bocage's factual allegations in her EEOC charge, even when construed broadly, are

---

[41]Rec. Doc. No. 20-18.

[42]*Id.*

insufficient to reasonably expect that they will trigger an EEOC investigation into whether Boomtown unlawfully retaliated against her. *Id.* Her EEOC charge alleges that less than two months before she was fired, Boomtown assigned her ten points because she was unable to notify Boomtown when she was sick and that those points were subsequently removed from her record.[43] Despite Bocage's argument, her EEOC charge did not indicate that Bocage had **complained** about receiving points for calling in sick due to her heart condition.[44] In fact, the charge does not allege that she engaged in **any** protected activity such as opposing an unlawful employment practice. The charge merely alleges that she was assigned points when she was sick and that the points were subsequently removed. Based on Bocage's charge, it cannot be reasonably expected that an EEOC investigation might have extended to claims of discriminatory retaliation. Accordingly, Bocage has not exhausted her Title VII claim that Boomtown unlawfully retaliated against her.[45]

## CONCLUSION

For the foregoing reasons,

---

[43]Rec. Doc. No. 20-18.

[44]*Id.*

[45]Even if Bocage's allegations were sufficient to put the EEOC on notice and trigger an investigation of retaliation, Bocage has produced insufficient evidence to demonstrate a claim of retaliation. However, the Court need not discuss Bocage's evidence due to its finding that Bocage has failed to exhaust administrative remedies.

24

**IT IS ORDERED** that Boomtown's motion for summary judgment is **GRANTED** and that Bocage's claims against Boomtown are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, May 11th, 2009.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE